## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ETHAN RADVANSKY, *on behalf of himself and others similarly situated*,<br><br>        Plaintiff<br><br>v.<br><br>1-800-FLOWERS.com, Inc.,<br><br>        Defendant. | Case No.:  1:25-cv-02811-AT |

### DEFENDANT 1-800-FLOWERS.COM, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT, OR ALTERNATIVELY, MOTION TO STRIKE OR DISMISS CLASS ALLEGATIONS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant 1-800-FLOWERS.COM, Inc. ("Defendant") moves to dismiss Plaintiff Ethan Radvansky's ("Plaintiff") Class Action Complaint ("Complaint"), *see* ECF No. 1, with prejudice for failure to state a claim for at least the following reasons: (1) Plaintiff is not a "residential telephone subscriber" under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; (2) the TCPA does not regulate text messages and, thus, they are excluded from coverage under the "Do Not Call" registry; (3) Plaintiff has not adequately alleged a "willful" or "knowing" violation to enable him to recover treble damages; and (4) Plaintiff has not sufficiently alleged immediate harm required for an injunction. Alternatively, if this Court does not

dismiss the Complaint, the class allegations should be struck or dismissed because courts have recognized that whether a phone number is "residential" cannot be determined on a class-wide basis. In support of this motion, Defendant respectfully states as follows:

## FACTUAL BACKGROUND

Plaintiff Ethan Radvansky filed his Complaint against Defendant on May 20, 2025, alleging violations of the TCPA. Compl. ¶ 1, ECF No. 1. Plaintiff alleges that since March 6, 2025, he has been the sole user of his cellphone number ending in 7404. *Id.* ¶ 8. He alleges that this is his "personal residential telephone number" and that he has not used it for "business or commercial purposes." *Id.* ¶¶ 9–10. Plaintiff alleges that his telephone number "has been registered on the [Do Not Call] Registry since August 13, 2015." *Id.* ¶ 11. He alleges that he received at least six text messages from Defendant at least 31 days after his phone number was registered on the Do Not Call Registry ("DNC Registry" or the "Registry"). *Id.* ¶ 12. Plaintiff alleges that the text messages "were intended for someone other than, and unknown to, the Plaintiff." *Id.* ¶ 14. Plaintiff does not allege that he, at any point, attempted to opt-out of receiving text messages. Nevertheless, Plaintiff seeks to certify a nationwide class of individuals who allegedly did not consent to receive text messages.

Plaintiff seeks an award of treble damages. *Id.* at ¶ 11, Prayer for Relief (g).

Plaintiff alleges that "Defendant knew, or should have known" that Plaintiff's

telephone number was registered with the Do Not Call Registry. *Id.* ¶ 19.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although the factual allegations of a complaint must generally be taken as true when

ruling on a motion to dismiss, a court should not accept "conclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford

Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Mere "labels

and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" and are "not entitled to the assumption of truth."). Rather,

plaintiffs are required to make factual allegations that are "enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must

"contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance,

Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (internal quotation

marks omitted). The court also may dismiss a claim pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Motions to strike or dismiss class allegations at the pleading stage are appropriate where it is clear from the pleadings that the class claims are defective. *See, e.g.*, *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 700–01 (M.D. Ga. 2012) (granting motion to strike class allegations at pleading stage); *Lyman v. Excel Impact, LLC*, No. 23-23767-CV, 2024 WL 982562, at *6 (S.D. Fla. Feb. 28, 2024) ("[A] motion to strike may be appropriate at this stage when it is clear on the face of the complaint that the certification under the proposed 23(b) class is improper." (citing *Mills v. Foremost Ins. Co*., 511 F.3d 1300, 1309 (11th Cir. 2008))); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").

## ARGUMENT

### I.    The Complaint Should Be Dismissed with Prejudice Under Rule 12(b)(6) for Failure to State a Claim Under the TCPA.

Plaintiff seeks relief under Section 227(c) of the TCPA (47 U.S.C. § 227). Section 227(c) requires rulemaking and regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they

object."[1] 47 C.F.R. Section 64.1200(c) is one such regulation. Section 64.1200(c) prohibits telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," unless there is prior express consent or an established business relationship.

### A.    Plaintiff Is Not a "Residential Telephone Subscriber" Under the TCPA.

Section 227(c)(5) applies only to "<u>residential</u> telephone subscribers." 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff alleges only that his cellular telephone number is his "personal residential telephone number" and that it has not been used for "business or commercial purposes." Compl. ¶¶ 9–10, ECF No. 1.

This Court must determine whether cellular phones are "residential" under the TCPA. Courts in this Circuit have previously deferred to the FCC's interpretation that "residential" includes cellular telephones. *See Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1308 (11th Cir. 2015) (holding that a 1992 FCC Order's interpretation of prior express consent applied to claims regarding a cellular line under Section 227(b)(1)(A)); *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1341-42 (S.D. Fla. 2022) (agreeing with defendant's argument but according deference to 2003 FCC Order).

---

[1] A court need not grant leave to amend if an amendment would be futile, such that "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

However, the United States Supreme Court's recent decision in *Loper Bright* changed the legal landscape by which this issue should be decided. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 2247 (2024). In *Loper Bright*, the Supreme Court held that the Administrative Procedure Act "requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* In fact, a court must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* With this holding, years of precedent under *Chevron*, requiring courts to give deference to the agency's interpretation where there is statutory ambiguity as long as the interpretation is reasonable, is overruled. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S. Ct. 2778 (1984).

Following *Loper Bright*, federal courts must conduct an independent review of whether cellular telephone subscribers should be considered "residential telephone subscribers" under Section 227(c) of the TCPA, without automatically deferring to the FCC. Plaintiff's case should be reviewed independently by this Court, without the benefit of briefing or input from the FCC. The legislative history of the TCPA should be considered, which "makes clear that the term 'residential telephone subscriber' did not refer to a wireless telephone subscriber." *Chennette v.*

*Porch.com, Inc.*, 50 F.4th 1217, 1234 (9th Cir. 2022) (dissenting in part). Following this reasoning further, if the purpose of Section 227(c) at the time was to protect privacy rights in the home, that purpose is defeated by cellular phones that are frequently used in public where there is no expectation of privacy.

At the time the TCPA was enacted, "a 'residential telephone' referred to a landline at a residence." *Id.*; *see also Residence, Black's Law Dictionary, Sixth Edition* (1990) (residence was defined as "[a] house where one's home is; a dwelling house."). "Residential" was defined as "of, relating to, or connected with residence or residences." *Residential, Webster's Third New International Dictionary* (1981). It is also necessary to remember that, at the time the TCPA was enacted, cellular telephones were in use and were referred to throughout the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii) ("any telephone number assigned to a . . . cellular telephone service . . ."). Congress knew when to distinguish and include cellular telephones within the TCPA. It chose not to do so in Section 227(c), and instead chose to refer to "residential subscribers," as opposed to "cellular telephone service subscribers." "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion of exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983) (citation omitted).

Not only did the common definition of "residential telephone" not include cellular telephones at the time the TCPA was enacted, but also the legislative history overwhelmingly shows that cellular telephones were not considered "residential" telephones. Sponsors of the TCPA referred to the need to protect privacy rights in the home and thereby phones purchased "for the convenience of the individual home-owner."[2] A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen). The Director of the Congressional Budget Office differentiated between residential subscribers and cellular telephones, stating the Act banned, "all prerecorded or automatically-dialed telephone calls" to "cellular telephone numbers" and "residential subscribers." S. Rep. No. 102-178, at 7 (1991). Even an appendix to a Senate hearing distinguished between the two. *Computerized Telephone Sales Calls and 900 Service: Hearings Before the S. Comm. On Com., Sci., and Trans.*, 102d Cong. 67 (1991) (appendix summary of the TCPA).

---

[2] *S. 1462, the Automated Telephone Consumer Protection Act of 1991; S. 1410*, the Telephone Advertising Consumer Protection Act; and *S. 857, Equal Billing for Long Distance Charges: Hearings on S. 875, 1410, and 1462 Before the Subcomm. on Communications of the Senate Comm. on Commerce, Science, and Transportation, 102nd Cong. 3 (1991) (Statement of Sen. Ernest F. Hollings, Chairman, S. Comm. on Com., Sci., and Transp.).*

So, although the FCC interpreted the statute and legislative history to encompass cellphone within the meaning of "residential" in its 2003 order, this Court may take judicial notice of the legislative history of the TCPA and make its own independent determination, under *Loper Bright*, that cellphones are not considered "residential" phones as protected by Section 227(c) of the TCPA. *Stone v. Sysco Corp.*, No. 16-CV-01145, 2016 WL 6582598, at *4 (E.D. Cal. Nov. 7, 2016) ("[A] court may properly take judicial notice of legislative history[.]"). After all, as the Supreme Court stated, "agencies have no special competence in resolving statutory ambiguities. Courts do." *Loper Bright*, 144 S. Ct. at 2266.

Such an independent determination by this Court would be supported not only by the extensive legislative history of the TCPA wherein legislators often distinguished cellular telephones from residential telephones, but also the statutory language itself. It is clear that "residential telephone" is understood to be landlines connected to the home. Therefore, Plaintiff's failure to plead that the allegedly unwanted texts he received were to a "residential telephone," i.e., a landline telephone connected to his home, is grounds for dismissal under Section 227(c) of the TCPA.

This Court may hesitate to hold that cellular telephones are not "residential telephones" under Section 227(c) due to the vastly different technological landscapes of 2025 and 1991, where the majority of people now rely on their

cellphones for primary communication, rather than landlines. However, this Court is bound by the language of the statute at the time it was enacted. "That is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper Bright*, 144 S. Ct. at 2266.

        1.   <u>It Is Not a Violation of the Hobbs Act to Hold That Cellular Telephones Are Not "Residential Telephones" Under Section 227(c).</u>

If this Court determines that cellphones are not "residential telephones" within the meaning of Section 227(c), and chooses not to give deference to the FCC, this holding is still consistent with the Hobbs Administrative Orders Review Act (the "Hobbs Act"). The Hobbs Act requires aggrieved parties to challenge "all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47" in a federal court of appeals within sixty days of the order's promulgation. 28 U.S.C.A. §§ 2342, 2344. More specifically, the Hobbs Act is invoked where a plaintiff seeks to "enjoin, set aside, suspend (in whole or in part), or to determine the validity of" the FCC's final orders, pre-enforcement. 28 U.S.C.A. § 2342; 47 U.S.C.A. § 402(a).

On June 20, 2025, the Supreme Court of the United States in *McLaughlin Chiro. Assoc., Inc. v. McKesson Corp., et al.*, specifically analyzed whether the Hobbs Act requires that district courts give deference to the FCC's interpretation of the term "telephone facsimile machine" in the TCPA. No. 23-1226, 2025 WL

1716136, at *3 (U.S. June 20, 2025). The court held "[t]he District Court is not bound by the FCC's interpretation of the TCPA. The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at *2. The court concluded that the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct, and that courts should interpret statutes like the TCPA under "ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation," but not being bound by it. *Id.*

The court reasoned that, because the Hobbs Act provides for pre-enforcement review of agency interpretation but is silent on judicial review in subsequent enforcement proceedings, the proper default rule in a subsequent enforcement proceeding is for the court to, "independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* at *6 (citing *Loper Bright*, 603 U.S. at 402, 144 S. Ct. at 2267). The court explained that this is the proper default rule because "this Court has long recognized a 'basic presumption of judicial review' of agency action" and

"'unless there is persuasive reason to believe' that Congress intended to preclude judicial review, this Court will not preclude review." *Id.* (citations omitted); *see also id.* at *7 ("In short, the background presumption of judicial review, the text of § 703 of the APA, and the tradition and precedents allowing parties in enforcement proceedings to contest an agency's interpretation combine to establish a clear default rule: In enforcement proceedings, district courts independently determine whether an agency's interpretation of a statute is correct.").

The Supreme Court looked at the clear language of the Hobbs Act and concluded that district courts were only precluded from *pre*-enforcement judicial review. *Id.* at *9. The Hobbs Act states that the court of appeals in a pre-enforcement challenge possesses "exclusive jurisdiction" to "enjoin, set aside, suspend (in whole or in part), or to determine the validity" of the agency order. 28 U.S.C. § 2342. The Supreme Court held that, "[c]ritically, if a district court in an enforcement proceeding disagrees with the agency's interpretation of a statute, the district court does not issue [] a declaratory judgment. Rather, the district court simply determines the liability of the defendant under the correct interpretation of the statute," and thus is not precluded from judicial review in subsequent enforcement proceedings. *Id.* "So the District Court in this enforcement proceeding can decide what the statute means under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation. By doing so, the District Court will not

'determine the validity' of the FCC's [] order and thus will not contravene the Hobbs Act." *Id.* at \*9. In conclusion, partnered with *Loper Bright*'s holding that district courts need not give deference to agency interpretation, *McLaughlin* confirms that the Hobbs Act is not an additional barrier to independent judicial review and this Court may exercise its own analysis—independent of FCC interpretation—of the statutory meaning of "residential telephone" in the TCPA.

**B.    Even if Cellular Phones are Considered "Residential Telephones," Section 227(c)(5) of the TCPA Does Not Apply to Text Messages.**

Section 227(c) of the TCPA does not apply to text messages. *Jones, et al. v. Blackstone Med. Servs., LLC*, Case No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at \*3 (C.D. Ill. July 21, 2025). Text messages—which are the basis of Plaintiff's Complaint—did not yet exist when the TCPA was enacted in 1991 and under a plain reading of the statute, Section 227(c) could not be read to encompass text messages. In its 2003 Order, it was the FCC, not Congress, that determined the TCPA applies to text messages. 18 FCC Rcd. 14014, 14115. But, Congress could not have intended to include text messages within the conduct prohibited by the TCPA, as the court held in *Jones, et al. v. Blackstone Med. Servs., LLC*. Case No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at \*3.

In *Jones*, plaintiffs alleged they received telemarketing text messages and calls to their cellular telephones from defendant in violation of Section 227(c) of the

TCPA. *Id.* at *1. Defendant sought to dismiss plaintiffs' claims, arguing the provisions of Section 227(c) do not prohibit text messages because the phrase "text message" and "SMS message" are wholly absent from Section 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c)-(d). *Id.* at *2. The court agreed with the defendant that "only 'call', 'telephone call', and 'artificial or prerecorded-voice telephone call' appear in Section 227(c) and its implementing regulations" pointing out that the FCC "clearly indicated its intent to regulate text messages or SMS messages under 47 C.F.R. § 64.12000(a) which was implemented under Section 227(b) only." *Id.*

The court further explained that "telephone call" is not a defined term in the statute, which remains silent as to its application to text messages. Significantly, the court noted that "[t]ext messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages." *Id.* at *4. The court further noted that, "in today's American parlance, 'telephone call' means something entirely different from 'text message'. Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Id.*

In analyzing the FCC's 2003 Order to bring text messages within the purview of Section 227(c)(5), the court pointed to the FCC's explicit mention of "automatic telephone dialing system," "artificial or prerecorded message," and "automated or prerecorded telephone calls," holding "the 2003 Order does not even address the

specific provisions of the TCPA and its regulations at issue in this case." *Id.* Although the court recognized the FCC's "level of expertise as to the various forms of communications existing at the time of the TCPA's enactment as well as now . . . the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages" going even further to highlight that the FCC's interpretation of call to include text messages "is a complicated one, and potentially does not even apply to Section 227(c)(5)." *Id.* at *5. Thus, the court found that plaintiffs failed to state a claim for violation of Section 227(c) of the TCPA "given that allegedly 'violative text messages' stand 'at the core of [p]laintiffs' factual allegations.'" *Id.* at *6.

Here, similar to the plaintiff in *Jones*, Plaintiff's factual allegations are based solely on receipt of text messages from Defendant at least 31 days after his cellular phone number was registered on the DNC Registry. Compl. at ¶¶ 12, 14. Consequently, the decision in *Jones* is fatal to Plaintiff's Complaint. Following *Loper Bright* and *McLaughlin*, this Court should independently interpret Section 227(c), and apply a plain reading to the text to determine that text messages are not within the purview of the protections afforded by Section 227(c)(5) and the DNC Registry. Accordingly, Plaintiff's Complaint should be dismissed.

### C.    Plaintiff Fails to Plead Facts Suggesting "Willful" or "Knowing" Violations of the TCPA.

Plaintiff has also failed to adequately plead treble damages under the TCPA. The TCPA allows for an award of treble damages for violations done "willfully or knowingly." 47 U.S.C. § 227(c)(5). Plaintiff asks in his Prayer for relief that the Court "award[] Plaintiff and the members of the class treble damages." Compl. at 11, ECF No. 1, Prayer for Relief (g). Plaintiff's Complaint does not allege that Defendant willfully and knowingly violated the TCPA.

Even if Plaintiff had pled conclusory factual allegations that Defendant willfully and knowingly violated the TCPA, binding Eleventh Circuit case law establishes that this is insufficient. Although courts throughout the country are split on what is required to plead, and then ultimately prove, entitlement to treble damages, the Eleventh Circuit has had an established standard for a decade. In *Lary v. Trinity Physician Financial & Insurance Services, Inc.*, 780 F.3d 1101, 1107 (11th Cir. 2015), the Eleventh Circuit held in a TCPA case that "the requirement of 'willful[ ] or knowing[ ]' conduct requires the violator to know he was performing the conduct that violates the statute." The court distinguished this from cases holding that a defendant only must know that a "call" was being made, because under that reading "the statute would have almost no room for violations that are not 'willful []' or knowing []'." Because the plaintiff never alleged that defendant *knew* it was calling *without consent*, and the "bare assertion" in the amended complaint that these

16

were knowing and willful violations was a legal conclusion, the court dismissed the allegations of entitlement to trebled damages. *Id.*

Here, *Lary* instructs that the "bare assertion" of willful and knowing is a "legal conclusion, not an assertion of fact that [the court] must accept as true." *Id.* Therefore, this Court must evaluate whether the allegation that Defendant "knew, or should have known, that telephone number (XXX) XXX-7404 was registered with the DNC Registry" is sufficient. Compl. ¶ 19, ECF No. 1.

This is not sufficient. Plaintiff does not allege anywhere that Defendant called him knowing that it was without consent. To the contrary, Plaintiff alleges that Defendant intended to reach someone else. Compl. ¶ 14, ECF No. 1 ("The subject text messages were intended for someone other than, and unknown to, the Plaintiff.").

Plaintiff's allegations are insufficient under *Lary* without an allegation that Defendant *knew* that it was calling *this Plaintiff* without consent. Thus, Plaintiff's request for treble damages should be dismissed with prejudice.

### D.    Plaintiff Fails to Plead Facts Sufficient for Injunctive Relief.

"[W]here a plaintiff seeks prospective relief, [he] must demonstrate a 'real and immediate threat' of future injury." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1252 (S.D. Fla. 2019); *Zononi v. CHW Grp., Inc.*, No. 22-CV-14358, 2023 WL 2667941, at *5

(S.D. Fla. Mar. 7, 2023) (dismissing prayer for injunctive relief in TCPA case where amended complaint failed to allege facts that show a likelihood of future injury). This generally includes some plausible allegation that the plaintiff is in imminent harm of receiving additional violative messages. *See, e.g., Miller v. Time Warner Cable Inc*., No., 8:16-cv-00329, 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016) (dismissing request for injunctive relief in TCPA case for lack of standing where there were no allegations suggesting possible future harm); *Schaevitz v. Braman Hyundai, Inc*., 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same); *see also In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 955–60 (N.D. Ill. 2016) (dismissing non-TCPA requests for injunctive relief on this basis).

Plaintiff does not allege that he will continue receiving text messages. Indeed, the last text messages were approximately two months ago. Compl. ¶ 13, ECF No. 1. This is not a threat of immediate injury, and the lawsuit should be dismissed. *See Zononi*, 2023 WL 2667941, at *5 ("After reviewing the FAC, the Court finds no allegations to suggest a threat of future injury, other than the mere fact of past injuries. Without more, past injuries alone do not suffice."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.").

Additionally, by holding that Section 227(c) does not apply to text messages as discussed, *supra*, the Court's holding is "fatal to the Plaintiffs' request for injunctive and declaratory relief[.]" *Jones*, Case No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *6.

## II.        The Class Allegations Should Be Struck or Dismissed.

In the alternative, the class allegations should be struck or dismissed because the class cannot, as a matter of law, be determined on issues of common proof. A court must determine whether to certify a class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). And this Court can require the pleadings to be amended to remove class action allegations. Fed. R. Civ. P. 23(d)(1)(D). Motions to strike or dismiss class allegations at the pleading stage are appropriate where it is clear from the pleadings that the class claims are defective. *See* Fed. R. Civ. P. 23(c)(1)(A) and Fed. R. Civ. P. 23(1)(D); *Lyman*, 2024 WL 982562 at *6 (recommending class allegations be struck in TCPA context prior to full discovery or a motion for class certification); *see also Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TWT, 2023 WL 2355891, at *2 (N.D. Ga. Mar. 3, 2023) ("striking or dismissing class allegations is allowed [before a motion for class certification] when 'a defendant demonstrates from the face of the complaint that it will be impossible to certify the class[ ] alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.'"); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-CV-

897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification.") (citation omitted); *see also Desmond v. Citimortgage, Inc.*, No. 1:12-CV-23088, 2015 WL 845571, at *7 (S.D. Fla. Feb. 25, 2015) (applying a Rule 12(f) standard to a motion to strike class allegations in report and recommendation, but stating that "[h]ad Defendant filed a motion to dismiss, then the Rule 12(f) standard would not have come into play.").

In *Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 224 (N.D. Cal. July 29, 2024), the Northern District of California recently denied class certification before discovery in a similar case. The plaintiff filed a lawsuit alleging that the defendant violated the TCPA by sending unsolicited text messages to individuals on the National Do Not Call Registry. *Id.* The plaintiff alleged that he used his cellphone for personal uses, not for a business, and that this was his "residential" telephone number. *Id.*

Shortly after the complaint was filed, the defendant filed a motion to deny class certification. The court struck the class allegations, holding that the plaintiff could not establish whether the many telephone numbers at issue were indeed residential without highly individualized inquiries. *Id.* The *Payne* plaintiff argued that the court should consider that numbers registered on the Do Not Call Registry are presumptively residential. Yet, the court cited established case law that this

argument "ignores that the presumption can be rebutted." *Id.* The Ninth Circuit identified detailed factors to consider whether a phone number is "residential": "(1) how plaintiffs hold their phone numbers out to the public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Chennette*, 50 F.4th at 1225.

The court in *Payne* held that "resolving each phone number's residential status requires a fact-intensive inquiry." *Payne*, 347 F.R.D. at 224 (quotation omitted); *see also Chennette*, 50 F.4th at 1230 (Bress, J., concurring) (determining whether a phone number is residential is a "fact-intensive, case-by-case approach"); *Miholich v. Senior Life Ins. Co.*, No. 21-CV-1123-WQH-AGS, 2022 WL 1505865, at *3 (S.D. Cal. May 12, 2022) ("Determining whether a wireless subscriber is a residential subscriber is 'fact intensive,' and requires case-by-case review . . . ." (citation omitted)). "'[T]he burden to show the residential status is on [plaintiff],' who, to obtain class certification, must 'advance a viable theory employing generalized proof to establish residential status.'" *Payne*, 2024 WL 3585119, at *3 (quotation omitted). Thus, the *Payne* court denied class certification "without discovery." *Id.*

More recently, in *Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710, at *2 (D. Or. Sept. 16, 2024), the court noted that, in TCPA

21

cases, "the question whether plaintiff's number is a residential or business phone number is not only fact-intensive but also hotly contested." *Id.* (quotation omitted) (citing *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 658 (W.D. Tenn. 2020) ("The determination about whether any particular wireless subscriber is a residential subscriber is fact-intensive."). The *Mattson* court cited Seventh Circuit case law in support of its holding that "plaintiff cannot meet the typicality or commonality requirements of Rule 23(a) 'because individual questions concerning whether he is a residential subscriber subject to the TCPA's protections will predominate the litigation.'" No. 3:18-CV-00989-YY, 2024 WL 4794710, at *3 (quotation omitted) (citing *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974)).

As in *Payne*, this Court should strike the class allegations without discovery as plaintiff's class similarly requires a determination of whether a class member has been texted on a "residential" telephone. *Chennette* identified five factors to determine whether a phone number is a "residential" telephone number. 50 F.4th at 1225. These include "how much" plaintiffs use the number for business or employment, "who pays" for the phone bills, and "other factors." *Id.* This is a fact-intensive inquiry. Further, "a 2021 survey of working adults from across the world revealed that in 2021, 64 percent of working adults from the United States used their personal smartphones

for business-related purposes,"³ and in 2024, "81% of employees use their smartphones for work-related tasks."

There will be another critical determination that makes this case ill-suited for class certification: determining who registered the phone number on the DNC Registry. The TCPA prohibits persons or entities from making telephone solicitations to anyone who has "registered his or her telephone number on the national DNC registry." 47 C.F.R. § 64.1200(c)(2). In *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022), the Northern District of Iowa found that although plaintiff alleged that her telephone number "has been registered with the DNC Registry," such an allegation was insufficient for recovery under Section 64.1200(c). Specifically, the court noted that "the plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *Id.* at *2. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). Section

---

³ *Share of adults worldwide using personal smartphones for work-related purposes in 2021, by country*, available at https://www.statista.com/statistics/1147490/share-adults-use-personal-smartphone-business-activities-by-country/ (last visited July 29, 2025).

227(c)(5) only displays an intent to create a private remedy where its promulgated regulations so provide. Section 64.1200(c) was promulgated under Section 227(c)(5). "But Section [64.1200(c)] does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else." *Rombough*, 2022 WL 2713278, at *2.

Here, Plaintiff makes no allegation that he himself registered his cellular phone number on the federal DNC. In fact, he alleges that his cellular phone number "has been registered on the DNC Registry since August 1, 2015." Compl., ECF No. 1, at ¶ 11. Since Plaintiff also alleges that he only became the owner of this cellular phone number on March 6, 2025 (*Id.* at ¶ 8) he clearly was not the subscriber who registered this cellular phone number on the DNC Registry. Not only is this a problem for Plaintiff specifically, but it highlights how individualized issues will dominate, as to properly define the class, every potential class member would have to be surveyed to see whether he or she registered his or her phone number on the DNC Registry.

Independent investigation will be needed into every cellphone number to determine whether it is "residential" and who registered the phone number on the DNC

Registry. As the cases above demonstrate, including *Payne*, this investigation is fact-intensive and cannot be done on a class-wide basis. There is no reason for this case to proceed through years of expensive individual and class discovery when that determination can be made at the earliest possible moment.

## CONCLUSION

For the reasons outlined above, this Court should dismiss Plaintiff's Complaint with prejudice. In the alternative, the class allegations should be stricken or dismissed.

Dated: August 13, 2025

Respectfully submitted,

**DENTONS US LLP**

*/s/ Leanne E. Sunderland*
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Leanne E. Sunderland, Esq.
Georgia Bar No. 351965

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com
Leanne.Sunderland@dentons.com

*Attorneys for Defendant 1-800-FLOWERS.com, Inc.*

## <u>LOCAL RULE 7.1(D) CERTIFICATE OF FONT COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared with one of the font and point selections approved by this Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt.

**DENTONS US LLP**

*/s/ Leanne E. Sunderland*
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Leanne E. Sunderland, Esq.
Georgia Bar No. 351965

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com
Leanne.Sunderland@dentons.com

*Attorneys for Defendant 1-800-FLOWERS.com, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2025, a copy of the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

This 13th day of August, 2025.

**DENTONS US LLP**

*/s/ Leanne E. Sunderland*
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Leanne E. Sunderland, Esq.
Georgia Bar No. 351965

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com
Leanne.Sunderland@dentons.com

*Attorneys for Defendant 1-800-FLOWERS.com, Inc.*