# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ethan Radvansky, on behalf of himself and )  Civil Action No.:25-cv-2811
others similarly situated,                 )
                                           )
       Plaintiff,                        )
                                           )
v.                                         )
                                           )
1-800-FLOWERS.com, Inc.                    )
                                           )
       Defendant.                        )
_____)

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S
## MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS

**Table of Contents**

Introduction ................................................................................................. 1

Background ................................................................................................. 4

Argument ................................................................................................. 5

I.   47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers ................................................................................................. 5

II.   Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held ................................................................. 7

　　a.   Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages ......................................... 10

　　b.   Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated ................................................................................ 12

　　c.   Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day ................................................................. 16

　　d.   The Applicable Standard Is the APA's Arbitrary-and-Capricious Review, and the FCC's Text-Message Clarification Easily Clears It .......... 19

III.   Plaintiff Plausibly Pleads the Potential for Treble Damages ............... 24

IV.   Plaintiff Sufficiently Alleges Entitlement to Injunctive Relief ............. 26

V.   The Class Allegations Should be Addressed on a Full Record, not Determined Prior to any Discovery ......................................................... 27

Conclusion ................................................................................................. 35

# Table of Authorities

## Cases

Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768 (11th Cir. 2011) .. 25

Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195 (D. Mass. 2021) ...... 9

Braver v. Northstar Alarm Servs., LLC, 329 F.R.D. 320 (W.D. Okla. 2018). 29

Breda v. Cellco P'ship, 934 F.3d 1 (1st Cir. 2019) ................................. 8

Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017) .................... 30

Callier v. Am.-Amicable Life Ins. Co. of Tex., 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022) ........................................................................... 34

Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016) ................................. 8, 23

Cacho v. McCarthy & Kelly LLP, 739 F. Supp. 3d 195 (S.D.N.Y. 2024)..... 1, 6

Chinitz v. Intero Real Estate Servs., No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921 (N.D. Cal. July 22, 2020) ........................................... 29

Christian Cty. Clerk v. Mortg. Elec. Registration Sys., 515 F. App'x 451 (6th Cir. 2013) ........................................................................... 26

Commodity Futures Trading Com v. Schor, 478 U.S. 833 (1986) ................ 10

D.G. v. William W. Siegel & Assocs., 791 F. Supp. 2d 622 (N.D. Ill. 2011) .. 34

Davis v. CVS Pharmacy, Inc., No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26, 2025) ..................................... 9, 15

Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152 (9th Cir. 2012) ............. 11

Drazen v. Pinto, 74 F.4th 1336 (11th Cir. 2023) ......................... 3, 8, 23

FCC v. Prometheus Radio Project, 592 U.S. 414 (2021) ........................ 20, 24

Ferrell v. Colourpop Cosmetics, LLC, 2025 U.S. Dist. LEXIS 140893 (C.D. Cal. Jul. 8, 2025) ...................................................................... 3

Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009) ....................... 10

Gadelhak v. AT&T Servs., 950 F.3d 458 (7th Cir. 2020) ..................... 8, 23

Gutierrez v. Fla. Advert. & Mktg. Corp., 387 F. Supp. 3d 1410 (S.D. Fla. 2019)

............................................................................................................ 26

Hall v. Smosh Dot Com, Inc., 72 F.4th 983 (9th Cir. 2023) ........................ 8, 23

Harriel v. Bealls, Inc., No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617 (M.D.

Fla. Aug. 15, 2025) ......................................................................... 3, 18

Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 Fed. App'x 930 (11th Cir. 2016). 27

Hughes v. Circle K Stores, Inc., 740 F. Supp. 3d 721 (C.D. Ill. 2024) ........... 31

Hulce v. Zipongo, Inc., 132 F.4th 493 (7th Cir. 2025) ................................ 11, 12

Ins. Mktg. Coal. Ltd. v. FCC, 127 F.4th 303 (11th Cir. 2025) ......................... 8

Isaacs v. USHealth Advisors, LLC, No. 3:24-CV-00216-LMM, 2025 WL

2268359 (N.D. Ga. Aug. 7, 2025) ............................................................ 3, 6

Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365 (6th Cir. 2015) .......... 12

Klassen v. Solid Quote LLC, 2023 WL 7544185 (D. Colo. Nov. 14, 2023) .... 34

Klay v. United Healthgroup, Inc., 376 F.3d 1092 (11th Cir. 2004) ................ 26

Krakauer v. Dish Network, L.L.C., 925 F.3d 643 (4th Cir. 2019) ................ 13

Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cty., No. 3:20-cv-

01922, 2022 U.S. Dist. LEXIS 170384 (D. Conn. Sep. 21, 2022) ..................... 28

Lopez v. Consumer Safety Tech., LLC, No. 8:24-cv-150-WFJ-AAS, 2024 U.S.

Dist. LEXIS 84873 (M.D. Fla. May 10, 2024) .................................................. 31

Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024) ...............17, 20, 22, 23

Lyman v. QuinStreet, Inc., No. 23-cv-5056, 2024 WL 3406992 (N.D. Cal. July

12, 2024) ........................................................................................................ 18

Marx v. Gen. Revenue Corp., 568 U.S. 371 (2013) ...................................... 7, 24

Mattson v. Rocket Mortg., LLC, No. 3:18-cv-00989-YY, 2024 U.S. Dist.

LEXIS 207988 (D. Or. Sep. 16, 2024) .............................................................. 32

McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146

(2025) .............................................................................................................. 2

New Prime Inc. v. Oliveira, 586 U.S. 105 (2019) ................................................ 15

Olney v. Progressive Cas. Ins. Co., 993 F. Supp. 2d 1220 (S.D. Cal. 2014) ... 34

Pacleb v. Cops Monitoring, No. 2:14-CV-01366-CAS(JCx), 2014 U.S. Dist. LEXIS 91976 (C.D. Cal. July 7, 2014)………………........................... 25

Payne v. Sieva Networks, Inc., 347 F.R.D. 224 (N.D. Cal. July 29, 2024)...... 32

Pickens v. Hamilton-Ryker IT Sols., LLC, 133 F.4th 575 (6th Cir. 2025) .... 17

Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc., 301 F. Supp. 3d 840 (N.D. Ill. 2018) ........................................................................................ 30

Rombough v. Robert D. Smith Ins. Agency, Inc., 2022 WL 2713278 (N.D. Iowa June 9, 2022) ........................................................................................ 33

Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) ....... 11, 16

Skidmore v. Swift Co., 323 U.S. 134 (1944) .................................................... 19

State Farm Mut. Auto. Ins. Co. v. Campbell, 463 U.S. 29 (2003) .................. 22

Sunshine State Reg'l Ctr., Inc. v. Dir., USCIS, 143 F.4th 1331 (11th Cir. 2025) ........................................................................................................................ 6

United States v. Paulson, 68 F.4th 528 (9th Cir. 2023) ................................... 16

Wakefield v. ViSalus, Inc., No. 3:15-cv-1857-SI, 2019 U.S. Dist. LEXIS 104862 (D. Or. June 24, 2019) ........................................................................ 25

Watson v. Integrity Sol. Servs., Inc., 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022) ................................................................................................................ 34

Williams v. Myler Disab., LLC, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. Nov. 12, 2020) ............................................. 9

Williams v. PillPack LLC, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496 (W.D. Wash. Feb. 12, 2021) …………………………………………… 31

Wilson v. Hard Eight Nutrition LLC, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025) .................................... 3, 6, 12, 15, 18

Wilson v. Skopos Fin., LLC, No. 6:25-cv-376, 2025 WL 2029274 (D. Or. July 21, 2025) ......................................................................................................... 12

**Statutes**

47 U.S.C. § 227 ................................................................. passim

47 U.S.C. § 332(c)(1)(A) ................................................... 6

47 C.F.R. § 20.15(a) .......................................................... 6

47 C.F.R. § 64.1200 .................................................. 1, 6, 19

Do Not Call Implementation Act, Pub. L. No. 108–10, 117 Stat. 557 (2003) . 6

Pallone-Thune TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019).. 22

**Other Authorities**

In re Rules and Regulations Implementing the TCPA, 18 F.C.C. Rcd. 14014 (2003) ...................................................... 1, 6, 16, 21

In re Targeting and Eliminating Unlawful Text Messages, 38 F.C.C. Rcd. 12247 (2023) .................................................. 1, 16, 19, 21

88 Fed. Reg. 20800 (Apr. 6, 2023) ............................... 16, 21

## Introduction

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003); The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5 (S.D.N.Y. 2024). Plaintiff Ethan Radvansky is one of them. So when Defendant 1-800-FLOWERS.com, Inc. ("Defendant" or "1-800 Flowers") sent the Plaintiff telemarketing texts in violation of the FCC's rules, the Plaintiff brought this

1

lawsuit to vindicate those rights and put a stop to 1-800 Flowers's unwelcome and intrusive marketing practices.

1-800 Flowers has now filed a Motion to Dismiss, and it's one that makes a big ask of this Court. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So, 1-800 Flowers therefore asks this Court to reject the FCC's longstanding interpretations and hold that the Do Not Call List protects only voice calls to landline phones, upending protections for potentially hundreds of millions of Americans.

This Court should decline that request. A fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. 1-800 Flowers asks this Court to substitute its judgment for Congress's and the FCC's largely because most "residential" phones were still landlines in 1991, and text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used. And even if the statute itself weren't clear on this, later enactments and multiple express delegations of discretion to the FCC show that Congress would have intended the FCC's consistent and well-reasoned judgment to win out.

2

Indeed, just last month this Court rejected Defendant's position. *See Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *2-3 (N.D. Ga. Aug. 7, 2025) (May, J.) (rejecting the defendant's argument "that [47 U.S.C. § 227(c)] does not apply to Plaintiff, because the term 'residential subscriber' categorically excludes cell phone users from [its] protections.").

And this Court is not alone. In fact, "[i]t appears that since *McLaughlin Chiropractic*, every court examining this particular issue concerning 'residential' phones has held that [47 U.S.C. § 227(c)]'s provisions apply to cell phones." *Harriel v. Bealls, Inc.*, No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025) (citing *Isaacs*, 2025 WL 2268359; *Ferrell v. Colourpop Cosmetics, LLC*, 2025 U.S. Dist. LEXIS 140893 (C.D. Ca. Jul. 8, 2025); *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025)). This Court should hold the same.

Defendant's cited cases do not change the analysis. In this Circuit, *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) confirms that unwanted texts inflict a concrete injury. And while *Davis* and *Jones* discussed below read § 227(c) narrowly, they are outliers even within their own districts and unpersuasive against this Court's decision in *Isaacs* and the growing post-*McLaughlin* consensus that § 227(c) protects residential cell-phone subscribers and applies to robotexts. The motion should be denied.

3

Defendant's remaining arguments fare no better. Plaintiff has plausibly alleged residential use of his cellular line, repeated nonconsensual texts, and intentional conduct sufficient to support treble damages and injunctive relief.

Finally, Defendant's attempt to strike Plaintiff's class allegations at the pleadings stage is premature and contrary to Rule 23 jurisprudence. Courts overwhelmingly hold that issues of predominance and commonality must be assessed on a developed factual record, not on the face of a complaint. Plaintiff's class allegations track the statute and are more than sufficient to proceed to discovery.

## Background

Plaintiff Ethan Radvansky is the regular and sole user of a cellular telephone ending in 7404, which he uses exclusively as his personal residential line (ECF No. 1 ¶¶ 8–10). That number has been registered on the National Do Not Call Registry since August 13, 2015 (ECF No. 1 ¶ 11). After that registration, Defendant 1-800-FLOWERS.com, Inc. sent at least six unsolicited marketing text messages to Plaintiff without his consent or request (ECF No. 1 ¶¶ 12–13, 17–18). On behalf of himself and others similarly situated, Plaintiff asserts a single cause of action under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), seeking statutory and treble damages, injunctive relief, and class-wide remedies (ECF No. 1 ¶¶ 49–61).

## Argument

4

I.    **47 U.S.C. § 227(c) affords protections to personal cellular telephone subscribers.**

Through its motion to dismiss, Defendant argues that a private right of action under 47 U.S.C. § 227(c) applies only to residential telephone subscribers not cell phone users like Plaintiff. This Court, however, very recently considered and rejected an identical argument:

> Defendant argues that [47 U.S.C. § 227(c)] does not apply to Plaintiff, because the term "residential subscriber" categorically excludes cell phone users from [its] protections.
>
> *            *            *
>
> Defendant argues that the term "residential subscriber" encompasses only users of landline, home phones. . . . Specifically, Defendant contends that, because the term "residence" refers to a person's home or abode, "residential subscriber" excludes cell phones, which can be used outside of the home. . . . Plaintiff responds that the TCPA does not categorically exclude cell phone users and, because Plaintiff uses his cell phone only for personal purposes rather than business purposes, [47 U.S.C. § 227(c)] applies to the text messages he received. . . .
>
> The Court agrees with Plaintiff.

*Isaacs*, 2025 WL 2268359, at *2-3.

This Court has it right.

The text, structure, and purpose of the statute confirm that conclusion. Section 227(c) empowers the FCC to protect "residential telephone subscribers" from unwanted solicitations. A "subscriber" is simply someone who pays for telephone service, and "residential" distinguishes use for personal or household purposes from

5

business use. See *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 205–07 (S.D.N.Y. 2024). Nothing in that language ties protection to a particular technology. To the contrary, Congress's choice to use "residential subscriber" in §227(c), rather than "residential telephone line" as it did in §227(b), shows that the statute focuses on the person using the service rather than the type of phone. See *Sunshine State Reg'l Ctr., Inc. v. Dir., USCIS*, 143 F.4th 1331, 1344 (11th Cir. 2025) ("when a statute uses one term in one place and a distinct term elsewhere, the difference matters").

Purpose underscores the point. Congress enacted §227(c) "to protect residential telephone subscribers' privacy rights" from unwanted solicitations, 47 U.S.C. §227(c)(1), and that interest does not change depending on whether the subscriber uses a landline or a cellphone as his household line. As *Isaacs* recognized, it would be "strange" to protect a landline user but not a cell phone user— particularly today, when many households rely exclusively on mobile phones. 2025 WL 2268359, at *4. Other courts agree. See, e.g., *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144, 2025 WL 1784815, at *5–6 (D. Or. June 27, 2025) (residential use, not technology, controls); *Harriel v. Bealls, Inc.*, No. 8:25-CV-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025) (same).

Congress and the FCC have consistently implemented §227(c) in this way. Since 1993, mobile carriers have been treated as "common carriers" whose

subscribers are protected under the TCPA. 47 U.S.C. §332(c)(1)(A); 47 C.F.R. §20.15(a). In 2003, Congress directed the FCC to harmonize its Do Not Call rules with the FTC's rules, which expressly covered mobile numbers. Do Not Call Implementation Act, Pub. L. No. 108–10, §3, 117 Stat. 557 (2003). The FCC has repeatedly confirmed that residential protections extend to wireless subscribers. See *Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶33–36 (2003). Defendant's reliance on a negative inference from §227(b)—which expressly mentions "cellular telephones"—is misplaced. "[T]he force of any negative implication depends on context." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013). Here, the provisions have "markedly different scope and structure": §227(b) targets specific calling technologies, while §227(c) safeguards identified people— residential subscribers—from unwanted solicitations. *Wilson*, 2025 WL 1784815, at *4. That structural distinction fully explains the difference in terminology.

In sum, "residential subscriber" means a person who uses a phone service for personal, non-business purposes, regardless of whether the phone is wired or wireless. Plaintiff is such a subscriber, his number has been on the National Do Not Call Registry since 2015, and Defendant's contrary interpretation would erode the very privacy interests Congress sought to protect.

## II.    Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held.

7

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Breda v. Cellco Partnership*, 934 F.3d 1, n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020) ("We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact.").

Defendant will likely rely on the recent order in *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366 (N.D. Fla. Aug. 26,

2025); one of two cases that refused to apply the above cited longstanding precedent. Contrary to what the court held in *Davis*, the Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id*. at 199. "Furthermore, in the most recent term Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id*. (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id*. at *6 (collecting cases).

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in

9

violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses

10

text messages. *See infra*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication, both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").[1] More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they

---

[1] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as Defendant emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). That breadth reflects Congress's choice to regulate solicitations by effect (commercial encouragement) rather than by transmission modality. See 47 U.S.C. § 227(a)(4); *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025).

> ### b. *Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.*

Section 227(c)(5) grants a right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c).

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. As the Ninth Circuit has explained, the "ordinary, contemporary, common meaning" of the word "call" is simply "to communicate or try to get into communication with a person by a telephone." *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting Webster's Third New International Dictionary 318 (2002)).[2] Accordingly, the FCC has recognized since 2003 that when the statute says "call," it means not only traditional voice calls but also modern text messages. 18 F.C.C. Rcd. at 14115 ¶ 165 (defining telemarking calls to encompass both).

That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); The New Merriam-Webster Dictionary (1989) ("to get or try to get in communication with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

"calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[3]

Neighboring provisions confirm the same usage. See § 227(b)(1)(A) (using "call" for transmissions to cellular telephones and paging services). To the extent *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025), suggested otherwise, it relied on contemporary parlance rather than the term's ordinary meaning at enactment—an approach the Supreme Court has warned against. See *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to language from

---

[3] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

1991, before the first text message was ever sent.[4] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[5] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re:*

_____

[4] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

[5] *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a) (using "call" or "calls" in the original text of 47 U.S.C. §§ 227(a)(1), 227(a)(3), 227(b)(1)(A), 227(b)(1)(B), 227(b)(2)(A), 227(b)(2)(B), 227(c)(1)(D), 227(c)(5), 227(d)(1)(A), 227(d)(3)).

*Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor Defendant identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

### c. Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with

16

the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details,"

17

accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395.  Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*.  *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). This Court should do the same.

As explained, the FCC is regulating here with discretionary authority

18

expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this Court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

      **d.  The Applicable Standard Is the APA's Arbitrary-and-Capricious Review, and the FCC's Text-Message Clarification Easily Clears It.**

Defendant's framing skips the first question courts ask after *Loper Bright*: what kind of agency action is at issue? When, as here, Congress expressly delegates discretion to "fill up the details" of a statutory program, a court does not substitute its judgment for the agency's but instead reviews under the APA's arbitrary-and-capricious standard—asking only whether the decision falls within a zone of reasonableness and is reasonably explained. See *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395, 401–02 (2024) (While *Chevron* is gone, courts still "respect delegations" and police for reasoned decision making); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) ("reasonably considered the relevant issues and reasonably explained the decision").

Congress expressly granted the FCC broad discretion in § 227(c) to choose "the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section," including whether to prohibit "making or transmitting a telephone solicitation" to registered numbers. 47 U.S.C. § 227(c)(1)(E), (c)(3)(F). That is classic "fill-the-details" language tied to a capacious privacy purpose—protecting residential subscribers from unwanted solicitations. *Id.* § 227(c)(1). Exercising that authority, the FCC has long implemented a unified DNC framework for *residential subscribers* regardless of technology (wired or wireless) and, in 2023, clarified and codified that DNC prohibitions encompass *text messages* to numbers on the Registry. See *Rules &*

20

*Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003) (wireless subscribers); *Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶¶ 26–27 (2023) (codifying that "call" in the DNC context includes texts to registered numbers), 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 6, 2023).

Under the APA, that clarification is easily reasonable. First, it advances the statute's core privacy purpose by addressing the undisputed rise of unwanted marketing texts and their unique intrusion characteristics. *See* 38 F.C.C. Rcd. at 12248 ¶ 1 (texts are immediately visible, widely relied upon, and junk texts erode trust and cause concrete harms). Second, it harmonizes the DNC framework across modalities, eliminating confusion about whether marketers may swap a ring for a buzz to evade DNC obligations. *Id.* at 12256–57 ¶¶ 26–27 (clarity, ease of enforcement, consistency with longstanding TCPA treatment of texts). Third, it aligns with the statute's architecture and history: § 227(c) protects *people*— "residential subscribers"—from "telephone solicitations," a defined term covering "a telephone call or message … transmitted to any person," 47 U.S.C. § 227(a)(4), and Congress has repeatedly legislated against the backdrop of the FCC's inclusion of texts in TCPA enforcement. *See, e.g.,* Pallone-Thune TRACED Act, Pub. L. No. 116-105, § 8(a), 133 Stat. 3274, 3283 (2019) (directing rules addressing "a call

made or a text message sent"), reflecting congressional awareness and acceptance of text coverage.

Defendant's contrary standard—asking the Court to treat the FCC's decision as if it carried no delegated policymaking content—misapprehends *Loper Bright*. The decision forbids reflexive Chevron deference to *statutory interpretations*, but it reaffirmed that when Congress assigns agencies discretion to implement a program (e.g., to pick "effective and efficient" methods), review proceeds under the APA, not de novo. 603 U.S. at 395, 401–02. That is precisely this case: § 227(c) tasks the FCC with selecting the rule set that best protects residential privacy; the 2023 order reasonably explains why including texts within DNC enforcement is the effective, administrable way to do so; and nothing in the record suggests the Commission ignored an important factor, relied on an impermissible factor, or offered an implausible explanation. See *State Farm*, 463 U.S. at 43.

Nor do the outlier district decisions Defendant cites change the analysis. Some framed the question as whether courts must give "appropriate respect" to the agency post-*McLaughlin* and then treated the inquiry as essentially de novo. But even *Loper Bright* recognizes that agency judgments made under express delegations continue to receive deferential APA review—and that outside those delegations, longstanding *Skidmore* principles apply. 603 U.S. at 388 (agency views remain "informed judgment[s]" with "power to persuade"). Here, both paths

22

support the Commission. Under the APA, the 2023 clarification is a reasoned choice within the delegated zone: it addresses a documented problem, furthers the statute's privacy aim, harmonizes enforcement, and is consistent with decades of FCC practice treating texts as "calls" for TCPA purposes. *See* 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27; 18 FCC Rcd. at 14115 ¶ 165 (2003). And even under *Skidmore*, the FCC's long, consistent, expert view that texts fall within the TCPA's "call"/"message" framework warrants substantial weight; courts have repeatedly found that interpretation persuasive in adjacent contexts. See, e.g., *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (recognizing text as a "call"); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 463 (7th Cir. 2020); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023).

Finally, Defendant's fallback contention—that the Commission "changed the law" without authority—overreads the 2023 order. The FCC did not invent a new prohibition; it clarified and codified how pre-existing DNC rules apply to a communication method already treated as a "call" across TCPA enforcement. See 38 F.C.C. Rcd. at 12256 ¶ 26 (clarification eliminates confusion and aligns with TCPA structure). Clarifying guidance that rationally promotes statutory objectives is paradigmatic reasoned decision making. *Prometheus*, 592 U.S. at 424–26 (upholding FCC's reasoned policy adjustments). And to the extent Defendant

invokes a negative implication from § 227(b)'s separate references to "cellular telephones," that structural argument is misplaced: § 227(b) regulates *technologies*, while § 227(c) protects *people* (residential subscribers) from "telephone solicitations," defined to include a "call or message." See 47 U.S.C. §§ 227(a)(4), (b), (c); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (negative implications depend on context).

In short, the right question is not whether this Court would have written the same rule in the first instance; it is whether the FCC reasonably chose and explained a DNC rule that advances § 227(c)'s privacy purpose. The Commission did. The Court should therefore reject Defendant's invitation to re-weigh policy and, consistent with *Loper Bright*, *State Farm*, and *Prometheus*, uphold the FCC's text-inclusive DNC clarification as a reasonable exercise of delegated discretion.

## III.    Plaintiff Plausibly Pleads the Potential for Treble Damages

Plaintiff sufficiently alleges that Defendant's TCPA violations were willful or knowing. The Complaint alleges that Defendant knew, or should have known, that Plaintiff's number was registered on the National Do Not Call Registry, yet failed to remove that number from its marketing campaigns (ECF No. 1 ¶ 19). This is more than enough to show intentional conduct. Defendant deliberately chose not to scrub its marketing lists against the National Do Not Call Registry, despite the availability of straightforward compliance tools and longstanding FCC rules

24

requiring such practices. Its failure to engage in these basic compliance steps predictably resulted in unlawful solicitation messages to Plaintiff.

Courts interpreting the "willful or knowing" standard under the TCPA have made clear that it does not require proof of malicious intent, but only that the defendant acted intentionally rather than inadvertently. See *Alea London Ltd. v. Am. Home Servs., Inc.,* 638 F.3d 768, 776 (11th Cir. 2011) (holding that treble damages require merely "knowing" conduct, not wanton or malicious conduct); *Wakefield v. ViSalus, Inc.,* No. 3:15-cv-1857-SI, 2019 U.S. Dist. LEXIS 104862, at *3 (D. Or. June 24, 2019) (adopting the interpretation that willfully or knowingly means the unlawful act was intentional or volitional, not that the defendant knew it violated the statute).

The allegations here easily meet that standard. Defendant took intentional actions by transmitting multiple marketing solicitations to a number that had been registered on the Registry for nearly a decade. It further compounded the problem by failing to implement safeguards, such as scrubbing its lists against the Registry, to ensure compliance. This conduct mirrors the allegations found sufficient in other TCPA cases, where courts denied motions to dismiss despite far less specificity. *See e.g. Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS(JCx), 2014 U.S. Dist. LEXIS 91976, at *12–13 (C.D. Cal. July 7, 2014) (denying dismissal where complaint simply alleged "multiple knowing and/or willful violations" of the

TCPA). Taken as true, Plaintiff's allegations demonstrate that Defendant acted intentionally, with disregard of the Registry, and that its repeated violations were not accidental.

This is more than sufficient at the pleading stage to sustain Plaintiff's claim for treble damages under 47 U.S.C. § 227(c)(5). Any dispute about intent is a fact question for discovery, not a pleading defect.

## IV.    Plaintiff Sufficiently Alleges Entitlement to Injunctive Relief

For a statutory injunction, like under the TCPA, if the "plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint." *See Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019) ("In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. It specified that where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute. Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint."); *see also, e.g., Christian Cty. Clerk v. Mortg. Elec. Registration Sys.*, 515 F. App'x 451, 458 (6th Cir. 2013) (citing *Klay*). Therefore, by sufficiently alleging TCPA violations, Plaintiff sufficiently alleges a basis for injunctive relief

aimed at curbing the violative telemarketing conduct that Defendant directed towards him.

## V.    The Class Allegations Should be Addressed on a Full Record, not Determined Prior to any Discovery.

Uniform texting campaigns, centralized opt-out and consent logs, and DNC-scrubbing procedures are common proof that will drive Rule 23 analysis and support certification, but certainly should not be prevented prior to any discovery. As the Eleventh Circuit explained below, the determination of whether to certify the class usually requires some discovery:

> [T]he Supreme Court has emphasized that class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, __ U.S. __, 569 U.S. 27, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (internal quotation marks omitted). In fact, "the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential...." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir.1973) (*en banc*) (internal citation and footnote omitted). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374 (2011) (internal quotation marks omitted).

*Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed. App'x 930, 934 (11th Cir. 2016).

Relying on *Herrera*, other courts have denied similar motions to strike in TCPA cases. *See e.g. Stemke v. Marc Jones Constr., LLC*, 2021 U.S. Dist. LEXIS

181916, *7-8 (M.D. Fl. 2021) ("The allegations in the Amended Complaint are not so facially defective to allow the Court to deny certification without permitting Plaintiff to take discovery to try to satisfy the requirements of Rule 23. Sunpro is free to renew the arguments once Plaintiff moves for class certification.")

Notwithstanding, before any discovery has taken place, Defendant claims that Plaintiff's class allegations should be stricken and that no court could ever certify a case under the TCPA's National Do Not Call Registry provision because the determination of whether a number is residential would need to be made on a case-by-case basis. Luckily for consumers bombarded with unwanted telemarketing calls despite their numbers being registered on the National Do Not Call Registry, this is not the case.

First, whether a telephone number is residential as opposed to used for business purposes is a class member identification issue, and challenges in identifying class members in cases under the TCPA's National Do Not Call Registry provision are not a preclusion to class certification. *See, e.g., Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cty.*, No. 3:20-cv-01922 (JBA), 2022 U.S. Dist. LEXIS 170384, at *13-14 (D. Conn. Sep. 21, 2022) ("Defendant's arguments boil down to this: Plaintiff has not demonstrated that the putative class includes only people who were called on applicable phone lines, not phones used for business purposes. However, Defendant's concern is not with the ascertainability of the class,

28

but instead with the feasibility of ensuring the class members meet the class definition. Plaintiff proposes resolving ambiguities by subpoena to the phone companies or obtaining information by a questionnaire or affidavit as part of the class notice process …. As the affidavit or questionnaire process has been approved by courts handling this very issue in TCPA class actions, the Court adopts it for this case. *See e.g., Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ('[I]f issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage').”); *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, at *45-46 (N.D. Cal. July 22, 2020) (“Plaintiff, on the other hand, argues that he does not need to identify all class members at this stage, he can prove Intero dialed residential numbers on a class-wide basis, and Intero's speculation as to individual issues affecting that National DNC Class does not affect predominance. … The Court agrees with Plaintiff. The Ninth Circuit has concluded that 'the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification.' *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017). Additionally, Intero will have the opportunity to challenge the

29

claims of absent class members if, and when, they file claims for damages. *See id.* Indeed, 'Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability.' *Id.* For example, '[a]t the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims.' Id."); *see also Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840, 857 (N.D. Ill. 2018) (certifying class under the TCPA's junk fax provision: "But this Court is bound by Seventh Circuit law. And the Seventh Circuit in *Mullins* expressly rejected the heightened ascertainability requirement adopted by other courts of appeals …. The *Mullins* court made clear that class member identification issues instead must be assessed in the context of 'the likely difficulties of managing a class action' prong of the superiority requirement" and "that manageability is almost never a bar to class certification. … Specifically addressing manageability concerns regarding proof of claims through affidavit, the *Mullins* court instructed that courts 'should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits.'").

Second, the majority of courts to address this issue at the pleadings stage have found arguments like 1-800 Flowers's argument to be premature at best. *See, e.g.,*

*Hughes v. Circle K Stores, Inc.*, 740 F. Supp. 3d 721, 727 (C.D. Ill. 2024) ("This reasoning extends to Circle K's arguments challenging commonality as well. While the Court appreciates that Circle K has concerns regarding the class definition, scope of the class, and factual challenges to commonality, its motion to strike class allegations is premature. … As discovery progresses, the class definition may very well need to be redefined and nothing in this Order precludes the Court from doing so."); *Lopez v. Consumer Safety Tech., LLC*, No. 8:24-cv-150-WFJ-AAS, 2024 U.S. Dist. LEXIS 84873, at *14 (M.D. Fla. May 10, 2024) ("The instant matter is not before the Court on a Rule 23 motion to certify. Instead, Intoxalock brings a Rule 12(f) Motion to Strike at an early stage of proceedings, before discovery has taken place. Nothing in the Amended Complaint indicates that a large portion of the class members' telephone numbers are nonresidential"); *see also Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *19-20 (W.D. Wash. Feb. 12, 2021) (granting class certification: "Defendant likewise maintains that Plaintiff has not proposed a reliable means of identifying residential phone numbers without individual inquiry. … Plaintiff's expert excluded from the list of proposed Class members 'all telephone numbers that were associated with any types of business and/or government' using LexisNexis data, and proposed other methods to 'cross-check the business identification process.' … Plaintiff's method reliably excludes non-residential numbers from the proposed Class list.").

As a result, the need to ultimately determine whether the reassigned, National Do Not Call Registry registered telephone numbers 1-800 Flowers sent text messages to were residential or business numbers is not a basis to deny class certification at this or any other stage.

The cases 1-800 Flowers cites do not support a different conclusion. For example, *Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224, 227 (N.D. Cal. July 29, 2024), arose from text messages directed to owners of trucking businesses who had used their telephone numbers to register their trucking business with the Department of Transportation—including the plaintiff. In granting the defendant's motion to strike, the court relied on undisputed evidence that the defendant "target[ed] trucking businesses that ha[d] registered with the USDOT" and the plaintiff failed to provide any proof that any telephone number text messages "including what he contend[ed] [was] his personal cell phone number—[were] registered with the USDOT for any non-business purpose." *Id*.; *see also Mattson v. Rocket Mortg., LLC*, No. 3:18-cv-00989-YY, 2024 U.S. Dist. LEXIS 207988, at *2-9 (D. Or. Sep. 16, 2024) [cited in 1-800 Flowers's motion] (finding that "there was a question of fact as to whether plaintiff's subject number was a residential or business number, and thus plaintiff could not satisfy the typicality and commonality requirements under Federal Rule of Civil Procedure 23").

Furthermore, in *Payne* the court acknowledged that other circumstances certification of classes under the TCPA's National Do Not Call Registry is appropriate, like when the communications are directed towards consumers—like here—in which case expert testimony and databases like Lexis-Nexis could be used to determine whether numbers were residential. *Payne,* 347 F.R.D. at 227.

Here, in contrast, 1-800 Flowers targets consumers for consumer purchases, including the flower and consumer products that were advertised to Plaintiff Radvansky, Plaintiff has never used his number in connection with a business, and there is no evidence that any other putative class member did either.

Accordingly, based on the court's analysis in *Payne*, 1-800 Flowers's premature and otherwise unsupported motion to strike Plaintiff Radvansky's class allegations should be denied.

Similarly, Defendant's reliance on *Rombough v. Robert D. Smith Insurance Agency, Inc.,* 2022 WL 2713278 (N.D. Iowa June 9, 2022), is misplaced and out of step with the weight of authority. The FCC's rule permits a "residential telephone subscriber" to register "his or her telephone number," and once listed, the registration remains effective indefinitely unless cancelled or removed by the administrator. 47 C.F.R. § 64.1200(c)(2). Nothing in the statute or regulations requires that the current user personally perform the registration to invoke DNC protections. Courts have repeatedly rejected efforts to impose such a "name-on-

33

the-bill" or "self-registration only" requirement, explaining that the relevant inquiry is whether the plaintiff is the regular user or subscriber of the called number. See, e.g., *Watson v. Integrity Sol. Servs., Inc.,* 2022 WL 4586407, at 9 (S.D.N.Y. Sept. 29, 2022) ("whether each class member registered their number on the NDNCR is irrelevant"); *Klassen v. Solid Quote LLC,* 2023 WL 7544185, at 4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011); *Olney v. Progressive Cas. Ins. Co.,* 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014). The Western District of Texas has been especially clear, characterizing the predicate of *Rombough* as "border[ing] on the frivolous," because DNC entries are phone-number based and persist across time. *Callier v. Am.-Amicable Life Ins. Co. of Tex.,* 2022 WL 17732717, at *5–6 (W.D. Tex. Oct. 18, 2022).

In sum, Defendant's motion to strike is nothing more than an effort to short-circuit Rule 23 analysis before Plaintiff has had a fair opportunity to develop the record. The overwhelming weight of authority holds that disputes over whether numbers are residential, how to identify class members, or what proof may ultimately support certification are issues for discovery and the certification stage— not a Rule 12 motion. Because Plaintiff alleges a facially valid class under the TCPA's Do Not Call provisions, and because Defendant's arguments rest on speculation rather than law, the motion to strike should be denied.

**Conclusion**

Section 227(c) protects people, not hardware, drawing a line between household and business use—not between landlines and mobile phones. That person-centered framing, coupled with the statute's privacy purpose, forecloses Defendant's effort to read cell phones out of the Do Not Call regime. *Isaacs* already recognized as much, and the post-*McLaughlin Chiropractic* consensus is the same: a subscriber who uses a cell phone as his household line is a "residential subscriber."

The TCPA regulates "telephone solicitations," defined to include a "telephone call or message," and reading "call" in harmony with "message," the statutory architecture, and decades of FCC practice leaves no loophole for robotexts. Treating texts as calls in the DNC context effectuates Congress's design, preserves the Registry, and prevents the end-run Defendant invites.

At bottom, Defendant's position would hollow out the statute for the medium most telemarketers now use and for the very subscribers Congress set out to protect. The TCPA's text, structure, and purpose—reinforced by longstanding agency implementation and modern authority—confirm that residential cell-phone users are covered and that texts are "calls," so the Court should deny the motion to dismiss and the motion to strike and allow this case to proceed to discovery and, in due course, class certification.

Date: September 20, 2025                    /s/ Anthony Paronich
                                            Anthony I. Paronich, *pro hac vice*
                                            Paronich Law, P.C.
                                            350 Lincoln Street, Suite 2400
                                            Hingham, MA 02043
                                            Tel: (617) 485-0018
                                            anthony@paronichlaw.com

                                            *Counsel for Plaintiff and the proposed class*