## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ETHAN RADVANSKY, *on behalf of himself and others similarly situated*, | |
| Plaintiff | Case No.: 1:25-cv-02811-TWT |
| v. | |
| 1-800-FLOWERS.com, Inc., | |
| Defendant. | |

## DEFENDANT 1-800-FLOWERS.COM, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT, OR ALTERNATIVELY, MOTION TO STRIKE OR DISMISS CLASS ALLEGATIONS

Defendant 1-800-FLOWERS.COM, Inc. ("Defendant") submits the following Reply Memorandum in further support of its Motion to Dismiss Plaintiff's lone cause of action under 47 U.S.C. § 227(c)(5). As discussed below, Plaintiff invites this Court to focus statutory interpretation on present-day meanings. However, the United States Supreme Court has consistently held that "the whole point of having written statutes" is that "every statute's meaning is fixed <u>at the time of enactment</u>." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (citation omitted) (emphasis added); *see also United States v. Miller*, 604 U.S. 518, 534 (2025). As discussed herein, the plain meaning of the terms "telephone call" in

Section 227(c)(5), and "residential telephone subscriber" in Section 227(c)(1), are fixed at the time the TCPA was enacted in 1991.[1]

## I.    The Complaint Should Be Dismissed with Prejudice Under Rule 12(b)(6) for Failure to State a Claim Under the TCPA.

### A.    A "Text Message" Is Not a "Telephone Call," and Therefore Does Not Give Rise to an Action, Under Section 227(c)(5) of the TCPA.

#### 1.    <u>The plain and ordinary meaning of "telephone call" at the time of Section 227(c)(5)'s enactment did not encompass "text message."</u>

Section 227(c)(5) confers a private right of action on a "person who has received more than one <u>telephone call</u> within any 12-month period by on or on behalf of the same entity in violation of the regulations prescribed under this subsection." (emphasis added). A bedrock of statutory interpretation is that courts must interpret every statute "in accord with the ordinary public meaning of its terms <u>at the time of its enactment</u>." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020) (emphasis added); *see also Loper Bright*, 603 U.S. at 400.[2] While canons of construction can

---

[1] Notably, while Plaintiff has sued Defendant solely under Section 227(c)(5), his Response in Opposition (ECF No. 17) ("Opposition") often refers to, or cites cases involving, Section 227(b)(3) in an attempt to muddy the legal waters—*i.e.*, given that the plain meaning of "telephone call" under Section 227(c)(5) is clear, Plaintiff hopes to confuse the material issues in this matter by citing neighboring provisions of the TCPA. However, Plaintiff sues solely under Section 227(c)(5).

[2] Contrary to Plaintiff's assertion, Defendant does not ask this Court to "substitute its judgment for Congress's." ECF No. 17 at 2. Congress did not define "telephone call" in Section 227(c)(5); therefore, this Court must exercise its independent judgment.

often play a prominent role in determining the ordinary public meaning of a statutory provision, if the text at issue is clear, a court's "job is at an end." *Id.* at 674.

Here, a "text message" is not a "telephone call" and certainly was not so in 1991—because text messaging did not exist when the TCPA was enacted in 1991. *See Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074, 2025 WL 2042764 at *4 (C.D. Ill. July 21, 2025). Stated another way, "text messaging had not yet been invented" when Congress used the word "telephone call" in Section 227(c)(5). *See Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016), *aff'd on other grounds*, 855 F.3d 793 (7th Cir. 2017) ("The first text message was sent on December 3, 1992."). Therefore, it is impossible for the term "telephone call" to have meant "text message" in 1991. And because, as the Supreme Court recently emphasized in *Loper Bright*, "the whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment," 603 U.S. at 400, the term "telephone call" should not be read to mean "text message." Three recent district court cases, including two <u>in this Circuit</u>, hold that a text message is not a "telephone call" in Section 227(c)(5). *See El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847 (M.D. Fl. Oct. 24, 2025); *Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-477, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025); *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074, 2025 WL 2042764 (C.D. Ill. July 21, 2025).

Plaintiff claims that *Jones* relied on contemporary parlance. This is not true.

3

While *Jones* held that words should be interpreted as taking their "ordinary, contemporary, common meaning," the court continued that the "ordinary, contemporary, common meaning" is found by looking at what words meant "as of the time the statute was enacted." 2025 WL 2042764, at *4. Text messaging was invented in 1991, and thus "telephone call" could not have included text messages.[3]

Recognizing that the plain meaning of the term "telephone call" in Section 227(c)(5) does not include text messages, Plaintiff tries to shift the Court's focus to the definition of "telephone solicitation" used in Section 227(c)(1),(3) and specifically defined in 227(a)(4). "Telephone solicitation" is defined in Section 227(a)(4) to mean a "telephone call *or message*" for the purposes of soliciting business. As *Davis* notes, Congress used the term "telephone call *or message*" in Section 227(a)(4) but then used a different term, "telephone call," in Section 227(c)(5). *Davis*, 2025 WL 2491195, at *2. "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermined [plaintiff's] position," as it showed that Congress did not use the term "telephone call" to encompass all "messages." *Id.* at *6. Because "distinct words have different meanings," the Court rejected plaintiff's argument that the terms "telephone call" in Section 227(c)(5) and

---

[3] This conclusion was only bolstered by the fact that modern parlance would *also* distinguish text messages and calls. *See id.*

"telephone call *or message*" in Section 227(a)(4) have identical meanings. *Id.*

Plaintiff, in his Notice of Supplemental Authority (ECF No. 19), relies upon a recent decision from the Northern District of California, *Wilson v. Medvidi Inc*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *1 (N.D. Cal. Oct. 7, 2025), which held that a "telephone call" encompasses "text messages" under Section 227(c). The court's decision is wrong for two reasons. First, instead of focusing on the term "telephone call" used in Section 227(c)(5), the court focused on the term "telephone solicitation" used in Section 227(c)(1) and defined in 227(a)(4).

Second, the court did not follow the Supreme Court's directive that "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. Instead, in determining whether Section 227(c)(5) applies to text messages, the court looked to the contemporary meaning of the term "call," citing a 2024 edition of Black's Law Dictionary. *Medvidi* relies *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998), to hold that whether some people <u>today</u> would use "telephone call" to mean "text message" is relevant. But *Oncale* does not stand for that proposition. *Oncale* did recognize that "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils," yet the Supreme Court nevertheless reiterated that "it is ultimately the provisions of our laws rather than the

principal concerns of our legislators by which we are governed." *Id.*[4] *Oncale* is consistent with subsequent precedent requiring courts to interpret every statute according to the ordinary public meaning of its terms at the time of its enactment.

In contrast, by interpreting "telephone call" to mean "text message" under Section 227(c)(5) despite text messages not existing when the statute was enacted, *Medvidi* improperly expanded the statutory language. Because such expansion defies applicable Supreme Court precedent, *Medvidi* should not be followed.

Even if this Court finds that the plain meaning of "telephone call" at the time of enactment is ambiguous and looks to the contemporary meaning of the term, this Court should instead follow the reasoning of two recent decisions from this Circuit. As noted by the court and counsel in *Davis*:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis*, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) (formatting alterations). On October 24, 2025, the Middle District of Florida agreed with *Davis* and held that "in common American English usage, a 'telephone call' and a 'text message' are

---

[4] *Oncale* held that the Civil Rights Act prohibiting "discriminat[ion] . . . because of . . . sex" included same-sex sexual harassment. 523 U.S. at 79. The dispute in *Oncale* was not what "sex" meant at the time Title VII was enacted, but instead whether discrimination because of such status could be caused by a person of the same sex.

separate and distinct forms of communication." *El Sayed*, 2025 WL 2997759, at *2.

>    2.    A <u>Congressional amendment reinforces the distinction</u>
>    <u>between a "telephone call" and a "text message."</u>

The above analysis should begin and end the inquiry here; text messages did not exist in 1991 and therefore could not have been included in the plain meaning of "telephone call" in Section 227(c)(5). Yet this conclusion is supported even further by a Congressional amendment to the TCPA. Specifically, in 2018, Congress amended the TCPA to bring "text messages" within its scope under a different provision, 47 U.S.C. § 227(e), regarding Caller ID requirements. Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)). In doing so, Congress distinguished "a call made using a voice service" from a "text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A), (B).

"When Congress uses different terms, [courts] expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025) (citing *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings.")). Congress's amendment of Section 227(e) to include "text messages" demonstrated its understanding of the difference between a telephone call and a text message. "The term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that

confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *El Sayed*, 2025 WL 2997759, at *2; *see also Fernandez*, 135 F.4th at 958 (holding if "calls" encompassed "text messages," then Congress would have prohibited "calls" under Section 227(e)); *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'").

> 3. <u>Plaintiff's authorities are inapposite and superseded by recent Supreme Court decisions.</u>

Plaintiff's Opposition states that "[t]he Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), disagree with Defendant's position" that the term "telephone call" does not encompass text messages. Opposition, p. 8. This is incorrect. First, not one of the six cases cited by Plaintiff for this proposition was decided after *McLaughlin*. And, second, not one of the cases cited by Plaintiff disagrees with Defendant's position that the term "telephone call" in Section 227(c)(5) does not include "text messages."

As Plaintiff observes, in 2003 the FCC proclaimed that the term "call," under Section 227(b) of the TCPA, "encompasses both voice calls and text calls." *In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 ¶ 165

(2003) ("2003 Order"). Crucially, the FCC's 2003 Order addressed text messages only in the context of a "call" under Section 227(b) rather than a "telephone call" under Section 227(c). This distinction further supports Defendant's argument above (*see* Section I.A.2) regarding delineation of Section 227(c) from other subsections of the TCPA. However, even if the 2003 Order were not so distinguishable, the FCC's proclamation need not, and should not, be followed by this Court. Nevertheless, it is historically relevant, as it informs pertinent case law.

Given that courts prior to *Loper Bright* followed the *Chevron* doctrine and deferred to FCC decrees,[5] it is unsurprising that Plaintiff was able to identify in his Opposition various cases indicating that text messages are equivalent to phone calls under Section 227(b). However, for at least two reasons, such authorities cited by Plaintiff do not save his Complaint from dismissal.

First, none of those cases apply to Section 227(c)(5). For instance, Plaintiff argues that *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), holds that a text message is a telephone call for all purposes under the TCPA. Yet the question of whether a text message constitutes a telephone call was not disputed in *Campbell-Ewald*.[6] *Campbell-Ewald* also did not address the statutory term "telephone call"

---

[5] *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014).

[6] The Supreme Court identified two questions, neither of which was whether text messages were calls. 577 U.S. at 156. In addition, the Supreme Court subsequently cited *Campbell-Ewald* in *Facebook, Inc. v. Duguid* when noting that neither party in *Duguid* "dispute[d] that the TCPA's prohibition also extends to sending unsolicited

under Section 227(c)(5) and instead dealt with a broader prohibition on "any call" under Section 227(b). *See id.* at 156; *see also* 47 U.S.C. § 227(b)(1)(A)(iii) (making it unlawful for certain persons "to make any call" to certain lines under certain circumstances). "When Congress uses different terms, [courts] expect that they hold different meanings." *Fernandez*, 135 F.4th at 958. Thus, even if *Campbell-Ewald* did find that a text message is a "call" under Section 227(b)(1)(A)(iii), this does not apply to the meaning of "telephone call" under Section 227(c)(5).

Second, certain cases cited by Plaintiff, although referencing the TCPA, do not interpret the TCPA at all. For instance, in *Drazen v. Pinto*, the Eleventh Circuit addressed whether an unwanted text message constituted a sufficient injury to confer Article III standing.[7] *See* 74 F.4th 1336, 1345 (11th Cir. 2023). Moreover, as was the case in *Campbell-Ewald*, the subsection of the TCPA at issue in *Drazen* was Section 227(b)(1)(A)(iii), not the one at issue here, Section 227(c). *See* 74 F.4th at 1340.

For one or both of the above reasons, the following cases cited by Plaintiff likewise are distinguishable: *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025); *Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019); *Barton v. Temescal*

---

text messages," stressing that therefore, the Court "assume[d] that it does without considering or resolving that issue." 592 U.S. 395, 400 n.2 (2021).

[7] Because courts must address jurisdictional issues, such as standing, before considering the merits of a case, a court's decision that receipt of a text message can constitute an injury sufficient to confer standing does not moot or decide the merits issue of whether a text message constitutes a telephone call under the TCPA.

*Wellness*, LLC, 525 F. Supp. 3d 195, 198 (D. Mass. 2021); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020). None of the cases cited by Plaintiff hold that a "text message" is a "telephone call" under Section 227(c)(5).

4.    <u>Deference to the FCC's interpretations is not warranted.</u>

Plaintiff also argues this Court should follow FCC interpretations equating text messages to telephone calls. The Court should decline this invitation. First, the plain meaning of "telephone call" clearly does not encompass a "text message" and, therefore, the inquiry is at an end. Second, the FCC's rule extending do-not-call protection to text messages should not be afforded any weight because this construction of the law was issued more than twenty years after the TCPA.

Prior to the Supreme Court's decision in *Loper Bright*, if a court determined that a statute was silent or ambiguous on a specific issue, the court would defer to an agency's interpretation if it was based on a permissible construction of the statute (the "*Chevron* doctrine"). However, the Supreme Court overruled the *Chevron* doctrine in *Loper Bright*. Courts instead must exercise their independent judgment and, when faced with a "doubtful and ambiguous" law, a court may accord due respect to an agency interpretation where, for example, the agency issued a "contemporaneous construction" of the law. 603 U.S. at 385–86. Here, Section 227(c)(5) is not ambiguous, and, even if it were, this Court should not rely on an

agency interpretation issued more than twenty years after enactment of the TCPA.

Further, the TCPA does not give the FCC discretion to alter the TCPA's plain language. To be sure, the TCPA *does* provide the FCC certain implementation authority; however, such authority does not permit the FCC to alter the choices made by Congress. *Ins. Mktg. Coal.*, 127 F.4th at 312-17 (finding the FCC issued an interpretation of the term "prior express consent" in conflict with its plain, common law meaning). Nowhere does the TCPA give the FCC the authority to redefine "telephone call" beyond its plain meaning at the time of enactment, thereby expanding the class of plaintiffs who may file a lawsuit under Section 227(c)(5). "The omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'" *El Sayed*, 2025 WL 2997759, at *2.

### B. Plaintiff Is Not a "Residential Telephone Subscriber" Under the TCPA.

Plaintiff is also not a "residential telephone subscriber" entitled to protection. In 2003, the FCC interpreted the term "residential subscribers" in Section 227(b) of the TCPA to include those who register their cell phone numbers on the DNC registry. Since that time, there has been a split in how courts have resolved this issue under Section 227(c). Some courts have held that the term "residential telephone subscribers" unambiguously does not include cell phone owners. *See, e.g.*, *Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023); *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-CV-2921,

2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Cunningham v. Politi*, No. 4:18-CV-0362, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019).

Notably, Congress referenced "cellular telephone" in Section 227(b). *See* 47 U.S.C. § 227(b)(1)(A)(3); 47 U.S.C. § 227(b)(2)(C); 47 U.S.C. § 227(b)(2)(H). "[T]he TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), evidencing that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019). "[E]xpressing one item of [an] associated group or series excludes another left unmentioned." *United States v. Vonn*, 535 U.S. 55, 65 (2002). "The expressio unius canon applies only when 'circumstances support[] a sensible inference that the term left out must have been meant to be excluded." *Gaker*, 2023 WL 2472649, at *3. And consistent with the findings in the TCPA, which "show a concern for privacy within the sanctity of the home," the *Gaker* court found that "[c]ell phones do not present the same concerns as residential telephones." *Id.* "[C]ell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion." *Id.* (punctuation and citation omitted).

Defendant acknowledges that some courts, including recently Judge May of this Court, have held that cell phone owners can be "residential telephone

subscribers." However, Defendant respectfully submits that these courts have incorrectly focused on the definitions of terms in the present day versus at the time of enactment. As with the argument above, this Court must look to the plain meaning of the statute at the time of enactment.

For example, in *Isaacs v. USHealth Advisors, LLC*, No. 3:24-CV-00216-LMM, 2025 WL 2268359, at *3 (N.D. Ga. Aug. 7, 2025), the Court cited dictionary definitions of "subscriber," "residential," and "residence" from 2024 and 2025 edition dictionaries. However, as previously noted, the United States Supreme Court has continued to stress that "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. At the time of its enactment in 1991, a "residential telephone" referred to a "land line at a residence." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1234 (9th Cir. 2022) (Ikuta, J., dissenting in part). And the other definitions cited in Defendant's Motion to Dismiss, which come from dictionaries closer to 1991, stress that the telephone must be connected to the home.

Courts are split on this important issue. Defendant respectfully urges this Court to focus on the meaning of the terms from the time of the statute's enactment.

### C. Plaintiff Fails to Plead Facts Suggesting "Willful" or "Knowing" Violations of the TCPA.

Plaintiff fails to cite binding case law in *Lary v. Trinity Physician Financial & Insurance Services, Inc.*, 780 F.3d 1101, 1107 (11th Cir. 2015), which is even more glaring given that *Lary* is a TCPA case that addressed the standard for pleading

a willful or knowing violation at the motion-to-dismiss stage. In *Lary*, the Eleventh Circuit held that the plaintiff must plead that "the violator . . . kn[e]w he was performing the conduct that violates the statute." *Id.* Here, there are no allegations that Defendant knew that it was unlawfully texting a number on the federal do not call list—instead, the allegations are that it thought it was texting its customer.

Plaintiff cites an Eleventh Circuit case that was decided four years before *Lary* that held that "intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). This is a correct statement of the law but ignores that the Eleventh Circuit set out the standard for "knowing" conduct in *Lary*.

Plaintiff then cites a case from the Central District of California from 2014 and the District of Oregon from 2019. ECF No. 17 at 25. Not only is the California case not binding on this Court, but the Ninth Circuit adopted the Eleventh Circuit's standard from *Lary* nine years later in 2023. *See True Health Chiropractic, Inc. v. McKesson Corp.*, No. 22-15710, 2023 WL 7015279, at *3 (9th Cir. Oct. 25, 2023) ("[W]e agree with the Eleventh Circuit [in *Lary*] that this standard requires more than merely intentional or volitional action."). And the District of Oregon, like some other courts, has adopted a treble damages test that differs from the Eleventh Circuit's standard. *See also, e.g.*, *Cunningham v. Montes*, No. 16-CV-761-JDP, 2020

WL 9347656, at *2 (W.D. Wis. Feb. 7, 2020). But *Lary* is binding in this Circuit for TCPA cases at the motion-to-dismiss stage.

### D.    Plaintiff Fails to Plead Facts Sufficient for Injunctive Relief.

Plaintiff has also failed to adequately plead entitlement to an injunction. Plaintiff solely relies on the *Klay* decision to posit that, in a TCPA action, he can obtain an injunction solely by alleging a violation of the TCPA. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004). Yet *Klay* did not so hold. Instead, *Klay* outlined that there is a conflict in the case law as to whether, when a statute specifically outlines the method by which a harmed party can obtain an injunction, the traditional requirements for an injunction nevertheless must be met in addition to any elements explicitly specified in the statute. *Id.* The Eleventh Circuit, after outlining both approaches, stated that, "[s]uffice to say that no overarching general principles are readily apparent, and we need not determine whether these cases are in conflict, or resolve any potential dispute here." *Id.* at 1099.

Two years after *Klay*, the Eleventh Circuit solidified that "a prayer for injunctive and declaratory relief requires an assessment, at [the motion-to-dismiss stage], of whether the plaintiff has sufficiently shown a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). And courts throughout this Circuit have commonly dismissed injunctive claims in TCPA actions. "In the absence of any allegation that a plaintiff will ever receive another

prerecorded message from the defendant in the future, courts in this Circuit have dismissed a plaintiff's request for injunctive relief." *See, e.g.*, *Culbertson v. Pro Custom Solar LLC*, No. 8:22-CV-2252, 2024 WL 3771606, at *3 (M.D. Fla. Aug. 13, 2024) (citing other cases for this proposition). "A claim seeking to enjoin a defendant's conduct . . . must allege facts showing an imminent threat to warrant injunctive relief. *Culbertson,* 2024 WL 3771606, at *3 n.2 (citing *Elend*, 471 F.3d at 1207). Plaintiff does not allege that he will receive any additional telephone calls or text messages from Defendant, and it has now been almost six months since any alleged violation. That is not an "imminent threat" of another violation.

## II.        The Class Allegations Should Be Struck or Dismissed.

In the alternative, the class allegations should be stricken because classwide liability cannot, as a matter of law, be determined on issues of common proof. Plaintiff's Opposition can be appropriately summarized into two main buckets: first, it is too soon; and second, that the recent *Payne* and subsequent decisions are materially distinguishable. Both arguments fail.

A court must determine whether to certify a class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Determining whether a phone number is residential will preclude class certification in certain contexts.

Determining whether a phone number is "residential" is an individualized issue. *Mattson v. Rocket Mortg., LLC*, No. 3:18-CV-00989-YY, 2024 WL 4794710, at

*2 (D. Or. Sept. 16, 2024) ("[T]he question whether plaintiff's number is a residential or business phone number is not only fact-intensive but also hotly contested[.]" (quotation omitted)); *see also Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 658 (W.D. Tenn. 2020) ("The determination about whether any particular wireless subscriber is a residential subscriber is fact-intensive."). As *Mattson* recognized, the prevailing doctrine is that a defendant would have to "conduct[] discovery" on each allegedly residential cell phone number because "the subsequent analysis of whether a mixed-use number was actually residential must consider the totality of the facts and circumstances about how the plaintiff actually used the number." *Id.*

Instead, courts in the Eleventh Circuit recognize the inherent difficulties of certifying similar actions. For example, in *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 460 (M.D. Fla. 2018), the plaintiff brought a TCPA class action based on the defendant allegedly intending to call one person but calling another. In denying class certification, the court reasoned, in part:

> Rather than engage in random robocalling, Defendant only calls numbers in its records and its intent was to call actual known customers in arrears. Dkt. 59-1 at 3. *Actual* customers almost certainly consented. This means that Defendant would likely have a possible defense against many class members, the precise contours of which could vary substantially. The scope of this sort of inquiry is likely to dwarf the much simpler question of whether Defendant called a given class member with a prohibited system. This is not a case where a defendant sprayed robocalls across a nonconsenting public.

As in *Wilson*, there is no dispute in this case that Defendant originally obtained TCPA-compliant consent. And Plaintiff has not met his burden here to certify a class. Plaintiff does not state how he can overcome "the factual disputes about how the subject number was acquired, how it was used, by whom, and for what purpose, and how it was paid for." *Id. "*The determination about whether any particular wireless subscriber is a 'residential subscriber'" is fact-intensive. *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 658 (W.D. Tenn. 2020) (quotation omitted).

Plaintiff correctly notes that *Payne* involved phone numbers that were registered on the USDOT website whereas the instant case involves consumers and business owners who had signed up to receive text messages regarding floral arrangements. But that distinction is not relevant. "[R]esolving each phone number's residential status requires a fact-intensive inquiry. And the burden to show the residential status is on [Plaintiff]," who, to obtain class certification, must "advance a viable theory employing generalized proof to establish residential status." *Id.* (quotation omitted). *Payne* then included an important qualifier: "while it is possible that some of the numbers registered with the USDOT—including [plaintiff's] own—might qualify as residential under the fact-specific inquiry required by *Chennette*, Payne has made no argument as to how that question can be answered without individualized inquiries." *Id.*

On October 21, 2025, a court recognized that these cases cannot be certified. *Schmitendorf v. Juicy's Vapor Lounge, Inc.*, No. 22-CV-02293, 2025 WL 2966205,

19

at *8 (D. Kan. Oct. 21, 2025). At a motion for class certification, the court held that "evidence will vary for each class member to prove he or she was a 'residential telephone subscriber' as that term is contemplated by the TCPA." *Id.* "[Plaintiff] presents no common evidence to show that each class member was a residential telephone subscriber." *Id.* The court assessed the "residential" caselaw, recognizing *how* individualized this determination is depending on the test that is applied. Here, Plaintiff has not presented any evidence that he could determine "residential" status on a classwide basis, even when the numbers collected were consumer phone numbers like in *Juicy*. This is also significant in that Plaintiff has filed close to a dozen TCPA lawsuits using this same telephone number as his "residential" line.[8]

There are too many individualized issues with residential v. non-residential, consent, standing, etc. Granting Defendant's motion to strike will save the parties hundreds of thousands, if not millions, of dollars that would be spent on this case.

## CONCLUSION

This Court should dismiss Plaintiff's Complaint with prejudice. In the alternative, the class allegations should be stricken or dismissed.

---

[8] Plaintiff's cases are distinguishable. *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) and *Lenorowitz v. Mosquito Squad of Fairfield & Westchester Cnty.*, No. 3:20-CV-01922, 2022 WL 4367596, at *5 (D. Conn. Sept. 21, 2022), involved a different subsection of the TCPA and simply would require a determination of whether the voicemail was received on a business landline. Plaintiff then cites two Ninth Circuit cases decided prior to the binding decision in *Chennette*.

Dated: October 27, 2025

Respectfully submitted,

**DENTONS US LLP**

*/s/ Mark A. Silver*
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Leanne E. Sunderland, Esq.
Georgia Bar No. 351965

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com
Leanne.Sunderland@dentons.com

*Attorneys for Defendant 1-800-FLOWERS.com, Inc.*

## <u>LOCAL RULE 7.1(D) CERTIFICATE OF FONT COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared with one of the font and point selections approved by this Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Times New Roman 14 pt.

**DENTONS US LLP**

*/s/ Mark A. Silver*
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Leanne E. Sunderland, Esq.
Georgia Bar No. 351965

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com
Leanne.Sunderland@dentons.com

*Attorneys for Defendant 1-800-FLOWERS.com, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2025, a copy of the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel of record by the Court's CM/ECF system.

This 27th day of October, 2025.

**DENTONS US LLP**

*/s/ Mark A. Silver*
Mark A. Silver, Esq.
Georgia Bar No.: 811928
Leanne E. Sunderland, Esq.
Georgia Bar No. 351965

303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Mark.Silver@dentons.com
Leanne.Sunderland@dentons.com

*Attorneys for Defendant 1-800-FLOWERS.com, Inc.*

2